UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL BRAMLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-01064-TWP-TAB |
| ) | |
| BRANDON MILLER, AMANDA COPELAND, ) | |
| and ARAMARK CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Aramark Correctional Services, LLC ("Aramark") and Aramark employees Amanda Copeland ("Copeland") and Brandon Miller ("Miller") (collectively, "Defendants") (Dkt. 25). Plaintiff Michael Bramley ("Bramley") is a prisoner confined to the Indiana Department of Correction ("IDOC"). He brings this lawsuit asserting that Defendants implemented a practice at Pendleton Correctional Facility ("Pendleton") where prisoners were each given a reusable plastic cup and "spork". However, they were not given a carrying case to protect these items from contamination, nor were they given adequate supplies to sanitize these items between meals, which resulted in Bramley being ill. For the reasons explained below, the Motion for Summary Judgment is **granted**.

**I. SUMMARY JUDGMENT STANDARD**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Federal Rule of Civil Procedure. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Schools*, 990 F.3d 1013, 1017 (7th

Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Community Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

## II.  BACKGROUND

Aramark is an independent contractor that provides food services to IDOC. (Dkt. 30-1, ¶ 5.) Under the terms of this contract, Aramark is authorized to

> operate and manage food services for correctional facilities under the jurisdiction of [IDOC]. These duties include purchasing food supplies and small wares, on-site storage of food supplies; delivery of food supplies; preparation of food; servicing food to offenders, students and staff; cleaning and maintaining a sanitary food service area and designated are[a] for storage of food supplies.

*Id.*

Aramark also has responsibility for cleaning and sanitizing the food service area, dining areas, food storage areas, and "related areas in the food service realm." *Id.*

Aramark is not authorized to issue cleaning supplies to prisoners, nor is it authorized to make physical changes to the facility, such as the installation of washing stations or other equipment that would ensure access to hot water. *Id.* at ¶ 6.

Miller is the Food Services Director for Aramark at Pendleton. (Dkt. 26-2, ¶ 2.) He was instructed by IDOC to implement a reusable cup and spork practice at Pendleton, which is a practice that IDOC utilizes at other facilities. *Id.* at ¶ 4. He believed that the purpose of this

practice was to reduce waste and prevent prisoners from flushing disposable utensils down the toilet. *Id.* The use of reusable cups and sporks has been approved by IDOC and by the Indiana State Department of Health, under regulation 410 AIC 7-24, so long as the reusable cups and sporks are designed in a way that allows for effective cleaning. *Id.* Miller ordered cups and sporks from Cooks Correctional and had those items distributed to prisoners at Pendleton. *Id.* The cups and sporks are NSF certified, which means they are designed and constructed in a way that promotes food safety. *Id.* at 7.

Copeland is the Vice President of Operations for Aramark. (Dkt. 30-1, ¶ 2.) She was not personally involved in the decision to issue cups or sporks at Pendleton. *Id.* at 7.

Bramley was previously a prisoner at Pendleton. (*See* Dkt. 2 at 1.) Bramley was issued a plastic cup and spork but was not provided with a means to protect these items from contamination or sanitize these items between meals. (Dkt. 43, ¶¶ 5, 6, 9, 14, 16.) Aramark placed a three-compartment sink with chemical detergents in the dining hall, but that the sink was not operational during the time relevant to this lawsuit. *Id.* at¶ 9.) Bramley suffered from chronic gastro-intestinal illness during the time he was forced to use the contaminated cup and spork. *Id.* at ¶ 7; Dkt. 44-1 at 2, 3, 5.

On or around March 31, 2021, Bramley was transferred to another IDOC facility. (Dkt. 43, ¶ 11.) At his new IDOC facility, inmates are provided with clean cups and sporks at every meal. After Bramley was transferred to this facility, and was no longer using a contaminated cup and spork, his gastro-intestinal illness went away. *Id.*

Bramley has submitted affidavits from twenty other prisoners at Pendleton. (*See* Dkt. 44-1 at 9-46.) They all state that they became ill with sore throats and coughs for months after they began using the contaminated cups and sporks. *Id.* Eventually, they stopped using these items

and began eating with their hands. *Id.* When they stopped using these items, their illnesses went away. *Id.*

### III.   DISCUSSION

Bramley contends the Defendants were deliberately indifferent to sanitary conditions by forcing him to repeatedly use a contaminated cup and spork, which caused him to experience chronic gastro-intestinal illness while housed at Pendleton. He argues that this illness persisted until he was transferred to a new facility where prisoners were issued disposable cups and utensils at every meal. The Defendants seek judgment as a matter of law because the decision to implement this practice was made by IDOC, that they had no authority to provide the prisoners with cleaning supplies, that they were not authorized to clean and sanitize areas of the facility beyond the food service area and dining hall, and that they were not made aware of unsanitary conditions or incidents of inmate illness as a result of the practice. The Court addresses the Defendants arguments below.

**A.   Legal Standard**

To prevail on his Eighth Amendment claims, Bramley must show that the Defendants imposed prison conditions which denied him "the minimal civilized measure of life's necessities." *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). A lack of heat, clothing, or sanitation can violate the Eighth Amendment. *Id.* at 93.

Bramley must also show that the Defendants acted with a culpable state of mind: "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). To establish deliberate indifference, a plaintiff must show that the defendant had

"actual knowledge of impending harm" that was "easily preventable." *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994); *see also Diaz v. Davidson*, 799 F.3d 722, 724 (7th Cir. 2015).

Aramark is a private corporation. To be liable under § 1983, private corporations acting under color of state law must have an express policy, or a widespread practice or custom, that resulted in a constitutional deprivation. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002); *Estate of Moreland v. Dieter*, 395 F.3d 747, 758-59 (7th Cir. 2004).

**B.** **Analysis**

Bramley has presented evidence that he was subjected to conditions that fell below the "minimal civilized measure of life's necessities." *Gillis*, 468 F.3d at 491. At Pendleton, Bramley was forced to reuse a plastic cup and spork at every meal. (Dkt. 26-2, ¶ 4.) These items quickly became contaminated because he had no means of sanitizing them between meals and no means of protecting them from contamination in his cell or elsewhere in the facility. (Dkt. 43, ¶¶ 5, 6, 9, 14, 16.) As a result of this contamination, Bramley suffered from chronic gastro-intestinal illness. *Id.* at ¶ 7; Dkt. 44-1 at 2, 3, 5. This illness went away when Bramley was transferred to a facility where he was no longer forced to use a contaminated cup and spork. (Dkt. 43, ¶ 11.) His experience is similar to many other prisoners at Pendleton, who became ill after using contaminated cups and sporks but returned to better health when they stopped using these contaminated items. (Dkt. 44-1 at 9-46.)

However, Bramley has not presented evidence that the three Defendants in this case were deliberately indifferent to these unsanitary conditions. The uncontradicted evidence shows that IDOC told Miller to implement a reusable spork and cup practice at Pendleton. (*See* Dkt. 26-2, ¶ 4.) This practice complied with Indiana State Department of Health regulation 410 AIC 7-24. *Id.*

5

at ¶ 7. Miller implemented this program and purchased cups and sporks through Cooks Correctional.

The problem with the reusable cup and spork practice was not the utensils themselves. The uncontradicted evidence is that these items were safe to use and constructed in way that promotes food safety. *Id.* at ¶ 4; *see also United States v. Weathington*, 507 F.3d 1068, 1073 (7th Cir. 2007) ("The Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons.") (internal quotation omitted); *Armstrong v. Lane*, 771 F. Supp. 943, 949 (C.D. Ill. 1991) ("The fact that the plaintiff must eat with *plastic utensils* and drink from Styrofoam cups fails to implicate the Constitution.") (emphasis in original). The problem was that the prisoners were not given a means to sanitize these items or protect these items from contamination. However, the Defendants were not authorized to provide prisoners with sanitizing chemicals to take back to their cells, nor did they have control over the facility's physical plant operations to ensure that prisoners had access to hot water. There is also no evidence that the Defendants were authorized to issue carrying cases to the prisoners so they could protect their cups and sporks from contamination. Such authority rested instead with IDOC and its individual employees. Thus, the Defendants were not in a position to remedy these unsanitary conditions, and there is no evidence that they were deliberately indifferent to these conditions.

There is also no evidence that Miller or Copeland were "actually aware" that prisoners were unable to sanitize their sporks and cups. Miller has used faucets and hot water in the kitchen and in the restrooms at Pendleton without issue. (Dkt. 26-2, ¶ 5.) Copeland had previously inspected the housing quarters at all IDOC facilities and checked to ensure they were in working order. (Dkt. 30-1, ¶ 10.) Excluding occasional maintenance issues, the prisoners always had access to hot water at all IDOC facilities. *Id*. Although Copeland conducted these inspections some years ago, when

she was still employed by IDOC, she had no reason to believe that the prisoners' access to hot water had changed. *Id.*

Finally, there is some uncertainty as to whether the reusable cup and spork practice is attributable to Aramark for purposes of Bramley's *Monell* claim. The decision to implement this policy at Pendleton was made by IDOC, but the implementation itself was carried out by Aramark. (*See* Dkt. 26-2, ¶ 4.) Assuming, without deciding that Aramark has some liability for implementing the practice, the Court reiterates that the issue in this case involves the failure to provide Bramley with a way to sanitize these items and protect them from contamination outside the dining hall. Aramark could not provide Bramley with these means, and there is no evidence that an Aramark practice caused his injury.

As the plaintiff, Bramley was the "master of the complaint" and had the ability to choose the defendants in this lawsuit. *See Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000). He could have named individuals who were authorized to provide him with access to sanitizing chemicals or other means of ensuring that his reusable cup and spork were free of contamination before each meal. Although Aramark, Copeland, and Miller had authority to maintain adequate sanitation in the dining halls and the food services areas of the facility, there is no evidence that they were authorized to provide Bramley with a means of sanitizing his cup and spork in his cell. There is also no evidence that they were authorized to provide Bramley with a carrying case to protect his cup and spork from contamination. Accordingly, the Defendants' Motion for Summary Judgment must be **granted**.

7

## IV. CONCLUSION

The Motion for Summary Judgment, Dkt. [25], is **GRANTED**. Final judgment in accordance with this Order shall now issue.

**SO ORDERED**.

Date: 2/16/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael Bramley, #972511
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com